WILLIAMS v. SWEATT.   (No. 6006.)

(Court of Civil Appeals of Texas. Austin. Jan. 10, 1919.)

1. SPECIFIC PERFORMANCE ⬤↪121(5) — EVIDENCE—VERBAL CONTRACT—POSSESSION AND IMPROVEMENT.

In suit for specific performance of verbal contract for sale of land, evidence that plaintiff entered and retained possession, and placed valuable and permanent improvements in reliance on contract, held to support findings for plaintiff on such questions.

2. SPECIFIC PERFORMANCE ⬤↪47 — VERBAL CONTRACT OF SALE—IMPROVEMENTS—INSIGNIFICANT CHARACTER.

Where buyer of land by verbal contract took possession and made permanent improvements, consisting of a house or shed, a well, corrals, fencing, grubbing, and clearing land, of a total value of $750, such improvements were sufficient to justify specific enforcement of the verbal contract of sale.

3. SPECIFIC PERFORMANCE ⬤↪123 — VERBAL CONTRACT OF SALE—INSTRUCTION.

In suit for specific performance of verbal contract to sell land, trial court properly refused defendant's requested instruction, requiring jury to find rental value of land while plaintiff was in possession.

Appeal from District Court, Crockett County; C. E. Dubois, Judge.

Suit by E. P. Sweatt against T. M. Williams. From judgment for plaintiff, defendant appeals. Affirmed.

N. W. Graham, of Ozona, and Wardlaw & Elliott, of Sonora, for appellant. Hill & Hill, of San Angelo, and Miles E. Sedberry, of Eldorado, for appellee.

KEY, C. J. The nature and result of this suit are stated as follows in appellant's brief:

"This suit was brought in the district court of Crockett county, Tex., by the appellee, E. P. Sweatt, and against the appellant, T. M. Williams, for the enforcement of a specific performance of an alleged verbal contract for the sale of some 1,413 acres of land on Live Oak creek, in Crockett county, Tex., by the appellant to the appellee, and, in the alternative, for damages for breach of such contract of sale.

"In his first amended original petition, filed on October 16, 1917, in lieu of his original petition filed on March 3, 1917, the plaintiff below alleged:

"First. That on or about the 20th day of April, 1915, he entered into a verbal contract with the defendant, appellant here, by the terms of which he agreed to purchase from defendant, and defendant agreed to sell and convey to him, the following lands situated in the western part of Crockett county, Tex., to wit, six sections of school land (describing same), together with 1,280 acres of patented land, lying east of said school land, said patented land to be bounded on the south by the 1,280 acres of patented land theretofore conveyed by T. M. Williams and wife to W. T. Brown on March 6, 1915, and to run west to the west line of defendant's patented land, composed of survey No. 19 in the name of Malcolm Johnson, and to run a sufficient distance north to include 1,280 acres lying west and adjacent to Live Oak creek. That at the time said trade was made the north line of W. T. Brown's 1,280 acres. had not been located upon the ground, but that defendant took plaintiff upon the ground and showed and represented to plaintiff where the south line of said 1,280 acres of patented land, or $4,480, one-tenth in cash, or come, and guaranteed to plaintiff that plaintiff's south line and Brown's north line would not fall farther north than a certain draw running into Live Oak creek, and that said 1,280 acres so purchased by plaintiff would be bounded by a line beginning at said point so shown plaintiff by defendant, being the said draw, and running west to the west line of defendant's patented lands, thence north with the west line of defendant's patented land to a point from whence a line run to the middle of Live Oak creek and thence down the middle of said creek to the place of beginning would contain 1,280 acres.

"Second. That plaintiff agreed to pay $2,500 in cash, or its equivalent, for the school land, and assume the balance due the state of Texas thereon, with interest from November 1, 1914, and to pay $3.50 per acre for the 1,280 acres patented land, or $4,480, one-tenth in cash, or its equivalent, and the balance in nine equal annual installments, with 6 per cent. per annum interest. That defendant agreed to convey the said land to him by warranty deed, and to execute and deliver said deed as soon as he could have the land surveyed and obtain field notes therefor.

"Third. That he, relying upon said contract and the defendant's representations as to the location of the south boundary line of said land, on or about May 10, 1915, with defendant's acquiescence and consent, took possession of said land, and soon thereafter paid the cash purchase money, or its equivalent, which the defendant accepted and still retains, and that he placed valuable and permanent improvements upon the 1,280 acres of patented land, consisting of a house or shed, a well, corrals, fencing and grubbing and clearing land, of a total value of $750, all of which improvements were placed upon said land by plaintiff in reliance upon said contract and defendant's representations as to the location of the land, and prior to the time the defendant refused to make conveyance of the land to plaintiff. That plaintiff is now, and has been at all times since his entry, in possession of said land.

"Fourth. That defendant did, on July 15, 1915, convey to plaintiff by deed the school land, and thereafter began to have the patented land surveyed, but, finding by a survey that the south line of the 1,280 acres so sold to plaintiff was not situated where defendant had represented that it would be, the defendant then represented to plaintiff that he would procure from Brown enough land lying south of Brown's north line and convey same to plaintiff, so as to allow the land sold to plaintiff to reach and extend as far south as defendant originally represented it would extend. That, having failed to procure said land from Brown, the defendant on or about September 19, 1916, proposed to plaintiff, as a compromise and adjustment of the matter, to sell and convey to plaintiff, instead of the 1,280 acres, all of the land lying north of that certain fence running from the southwest corner of the Malcolm Johnson survey to Live Oak creek, built by the plaintiff and Brown, and south of the north or northeast line of said Johnson survey and a line extending from the north or northeast corner of said Johnson survey due east to Live Oak creek, and bounded on the east by Live Oak creek and on the west by the west boundary line of said Johnson survey, describing the same by field notes, containing 1,413 acres of land. That defendant proposed that if plaintiff would accept same, defendant would procure title from Brown to the 280 acres, and convey same, together with the remaining 1,133 acres, to plaintiff immediately; plaintiff to pay to defendant the same price for the 1,133 acres, and upon the same terms as originally agreed upon as to the 1,280 acres; and that plaintiff accepted the proposition. But that the defendant, on or about October 20, 1916, finally failed and refused to make plaintiff a deed to said patented land.

"Fifth. That defendant placed plaintiff in possession of the 1,413 acres of land, and that plaintiff has had possession at all times since. That plaintiff's improvements are upon the 1,413 acres, and that he is ready and willing to perform his contract of purchase.

"Sixth. In the event it should be found that plaintiff is not entitled to have the contract specifically performed, then for cause of action he alleges that he purchased from defendant the six sections of school land and the patented land as a whole and in one body and in one and the same contract; that the school land is situated off and away from Live Oak creek, from which stock pastured on the school lands are watered, and that there is no other water on or accessible to said school lands, the said school lands lying west from said creek at distances from one to four miles and that the patented land lies adjacent to and bordering on said creek, and between the creek and the school lands; that plaintiff in purchasing the school lands relied upon his agreement for the purchase of the patented land, and that the defendant knew the situation of the school lands and patented land with reference to the creek, and well knew that plaintiff, in purchasing the school lands, did so in reliance upon his contract to purchase the patented lands in connection therewith; that plaintiff would not have purchased the school lands had not defendant contracted to sell plaintiff the patented land, all of which facts were well known to defendant. That the school land, when owned in connection with the patented land, is of the reasonable value of $2.50 per acre bonus, but without the

ownership of the patented land in plaintiff the school land is not reasonably worth more than $1.25 per acre; that in event plaintiff is denied a specific performance of the contract for the purchase of the patented land, he has suffered damages,. and entitled to recover the difference in the market value of the school lands in the sum of $4,800.

"Seventh. That the patented land was, at the time of the breach of contract, of the reasonable value of $5 per acre, and in event plaintiff is denied a specific performance, he has suffered damages, and entitled to recover $1.50 per acre on the 1,413 acres.

"Eighth. Plaintiff prays for specific performance, and in the alternative, for damages.

"The defendant filed general and special exceptions to the first amended original petition of plaintiff, a general denial, and specially answered:

"First. That the contracts alleged and sued on' are oral and verbal contracts, and are in contravention of article 1103 of Vernon's Sayles' Texas Civil Statutes of 1914.

"Second. That said contract and contracts alleged in plaintiff's first amended original petition are oral and verbal contracts, and are in contravention of subdivision 4 of article 3965 of Vernon's Sayles' Texas Civil Statutes, and the defendant pleads the statutes of fraud in bar of plaintiff's right to recover herein.

"The defendant's general and specific exceptions to plaintiff's first amended original petition were in all things overruled.

"Trial was had in the court below, with the aid of a jury, and the cause was submitted to the jury upon special issues, to which special issues the defendant filed his objections, which were overruled by the court. Various special issues were requested by the counsel for plaintiff and defendant.

"Upon the findings of the jury the court below rendered judgment for the appellee. Defendant, in due time, filed his motion for new trial, which was overruled. Defendant duly excepted and gave notice of appeal, and filed his appeal bond."

## Opinion.

[1] Under appellant's first assignment of error, his counsel make the contention that the verdict and findings of the jury are contrary to the evidence, because the same shows that appellee, under his verbal contract of purchase of the land sued for, did not enter upon and retain exclusive possession thereof, and place such valuable and permanent improvements thereon, in reliance in good faith upon such verbal contract.

We have carefully considered the statement of facts, and do not agree with appellant's contention. There was evidence before the jury to support the findings they made in appellee's favor on the questions referred to.

[2] Under the second and fourth assignments of error, appellant reiterates the proposition that the improvements referred to were of such insignificant character as

not to justify a court of equity in enforcing the verbal contract.

That contention has already been disposed of in passing upon the first assignment, and therefore the second and fourth assignments are overruled.

[3] The third assignment complains of the action of the trial court in refusing a requested instruction, requiring the jury to find the rental value of the land in controversy during the time appellee was in possession thereof.

According to the decision of our Supreme Court in Wells v. Davis, 77 Tex. 636, 14 S. W. 237, the charge referred to was properly refused.

The fifth and last assignment complains because the court overruled a certain special exception to the plaintiff's petition. We hold that the ruling referred to was correct, and therefore overrule that assignment.

No reversible error has been shown, and the judgment is affirmed.

Affirmed.